LINKLATERS LLP
R. Paul Wickes
Paul Hessler
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 903 9000

*Attorneys for Defendant Goldman Sachs Credit Partners L.P.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OCEAN RIDGE CAPITAL ADVISORS, LLC, as
Litigation Trustee of THE MAS LITIGATION
TRUST,

                                        Plaintiff,

                    v.

METROPOLITAN LIFE INSURANCE
COMPANY, THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY, CAPITAL
D'AMERIQUE CDPQ INC., CAISSE DE DEPOT
ET PLACEMENT DU QUEBEC, CSFB LP
HOLDING, SKOOG FAMILY INVESTMENTS.
LLC, BANCAMERICA CAPITAL INVESTORS II,
L.P., WINDWARD/PARK AB III, L.L.C.
WINDWARD CAPITAL PARTNERS L.P.,
WINDWARD CAPITAL ASSOCIATES, L.P.,
SUEZ CAPITAL PARTNERS II, L.P., INDOSUEZ
CAPITAL CO-INVEST PARTNERS, L.P. SCP II
ASSOCIATES, CREDIT SUISSE FIRST BOSTON
(USA), INC., CREDIT SUISSE FIRST BOSTON,
GOLDMAN SACHS CREDIT PARTNERS L.P.,
JEFFREY A. ANDERSON, JON F. BAKER, JOSE
R. GARCIA, ROBERT H. BARTON III, R.H.
WACASER, PETER S. MACDONALD, GARY
SWENSON, JOHN F. MAYPOLE, THOMAS
GRAHAM, DONALD A. MCKAY, HENRY A.
NICKOL, JEFFREY HODGMAN, A. KIPP
KOESTER, CRAIG VAN ESS, GURMINDER S.
BEDI, THOMAS WALKER, JACK SKOOG AND
DEAN VANEK,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 CV 3213 (SAS)

**MEMORANDUM OF LAW OF
DEFENDANT GOLDMAN
SACHS CREDIT PARTNERS,
L.P. IN SUPPORT OF ITS
MOTION TO DISMISS THE
COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES………………………………………………………………...ii

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.    THE PLAINTIFF'S ALLEGATIONS AGAINST GSCP FAIL TO SATISFY RULE 9(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE ...................................................... 4

II.   THE ECONOMIC LOSS RULE BARS THE PLAINTIFF'S TORT CLAIMS ................. 6

III.  THE PLAINTIFF'S TORT CAUSES OF ACTION FAIL FOR OTHER INDEPENDENTLY DISPOSITIVE REASONS................................................................. 8

   A.    The plaintiff's aiding and abetting claim must be dismissed because GSCP's actions do not constitute aiding and abetting under New York law......................................... 8

   B.    The plaintiff's conspiracy claim should be dismissed as duplicative. ....................... 10

   C.    Plaintiff's gross negligence claim does not state a claim under New York law........ 10

IV.   THE PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS FOR AIDING AND ABETTING, AND CIVIL CONSPIRACY TO COMMIT, BREACHES OF FIDUCIARY DUTIES. ........................................................................................................................... 11

V.    PLAINTIFF'S FRAUDULENT CONVEYANCE ALLEGATIONS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED....................................................... 13

   A.    Meridian's payment of GSCP's fees cannot have been a constructively fraudulent conveyance. .............................................................................................................. 13

   B.    The plaintiff's intentional fraudulent conveyance claim must be dismissed because the plaintiff's fraud allegations are not pleaded with the particularity required by Rule 9(b), and because a payment to an existing creditor cannot be fraudulent. ............................................................................................................... 15

CONCLUSION……………………………………………………………………………..17

# TABLE OF AUTHORITIES

Page

## CASES

*Albion Alliance Mezzanine Fund, L.P. v. State Street Bank & Trust Co.*,
797 N.Y.S.2d 699 (Sup. Ct.) *aff'd*, 767 N.Y.S.2d 619 (App. Div. 2003)........................8

*Am. Baptist Churches of Metro. N.Y. v. Galloway*,
710 N.Y.S.2d 12 (App. Div. 2000) ........................10

*Am. High-Income Trust v. Alliedsignal*,
329 F. Supp. 2d 534 (S.D.N.Y. 2004)........................5

*Bolt Elec., Inc. v. City of New York*,
53 F.3d 465 (2d Cir. 1995)........................2

*Borsellino v. Goldman Sachs Group, Inc.*,
477 F.3d 502 (7th Cir. 2007) ........................4

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004)........................4

*Castillo v. Dean Witter Discover & Co.*,
No. 97 Civ. 1272, 1998 WL 342050 (S.D.N.Y. June 25, 1998)........................4, 5

*Castillo v. First City Bancorporation of Tex., Inc.*,
43 F.3d 953 (5th Cir.1994) ........................4, 5

*Computech Int'l, Inc. v. Compaq Computer Corp.*,
No. 02 Civ. 2628, 2004 WL 1126320 (S.D.N.Y. May 21, 2004)........................7

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005),
546 U.S. 1172 (2006)........................4

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
755 F.2d 239 (2d Cir. 1985)........................10

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
387 F. Supp. 2d 265 (S.D.N.Y. 2004)........................6

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*,
375 F. Supp. 2d 257 (S.D.N.Y. 2005)........................15, 16

*Fernandez v. Koretz*,
700 N.Y.S.2d 888 (App. Div. 1999) ........................3

*Green Hills (USA), L.L.C. v. Aaron Streit, Inc.*,
361 F. Supp. 2d 81 (E.D.N.Y. 2005) ........................................................7

*HBE Leasing Corp. v. Frank*,
48 F.3d 623 (2d Cir. 1995).............................................................13, 14

*Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.)*,
32 B.R. 199 (Bankr. S.D.N.Y. 1983) .......................................................3

*Kaufman v. Cohen*,
760 N.Y.S.2d 157 (App. Div. 2003) .........................................................9

*King v. George Schonberg & Co.*,
650 N.Y.S.2d 107 (App. Div. 1996) .........................................................9

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
238 F.3d 363 (5th Cir. 2001) ..................................................................5

*MFS/SUN Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*,
910 F. Supp. 913 (S.D.N.Y. 1995)...........................................................15

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)................................................................................5

*In re Mediators, Inc.*,
105 F.3d 822 (2d Cir. 1997).............................................................11, 12

*PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*,
No. 99 Civ. 3794, 2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003)............6, 7

*Pension Comm. of the Univ. of Montreal Pension Plan v. Bank of Am. Sec., LLC*,
446 F. Supp. 2d 163 (S.D.N.Y. 2006).......................................................8

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*,
No. 07 Civ. 3494, 2007 WL 2044656 (S.D.N.Y. July 17, 2007) ...................8

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..............................................................4, 6

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996)......................................................................2

*Santee v. Nw. Nat'l Bank (In re Mako, Inc.)*,
127 B.R. 471 (Bankr. E.D. Okla. 1991)....................................................3

*In re Sharp Int'l Corp.*,
403 F.3d 43 (2d Cir. 2005)......................................................................9, 14, 16

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991)..........................................................................11, 12

*Shop Vac Corp. v. BCL Magnetics Ltd.*,
No. 04-CV-26 22005 WL 2739161 (N.D.N.Y. Oct. 24, 2005) ............................7

*Shred-It USA Inc. v. Mobile Data Shred*,
222 F. Supp. 2d 376 (S.D.N.Y. 2002), *aff'd*, F.App'x 812 (2d Cir. 2004)....................7

*Solomon ex rel. Solomon v. City of New York*,
489 N.E.2d 1294 (N.Y. 1985)......................................................................10, 11

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
599 N.Y.S.2d 816 (App. Div. 1993) ................................................................15

*Wight v. BankAmerica Corp.*,
219 F.3d 79 (2d Cir. 2000)................................................................................11

## STATUTES & RULES

11 U.S.C. § 547....................................................................................................14

Bankruptcy Code § 548 ......................................................................................13

Fed. R. Civ. P. 9(b) ..........................................................................2, 3, 4, 5, 6, 7, 13, 15

Fed. R. Civ. P. 12(b)(1)..............................................................................3, 12, 13

Fed. R. Civ. P. 12(b)(6)..............................................................................3, 12, 13

**MEMORANDUM OF LAW OF DEFENDANT GOLDMAN SACHS
CREDIT PARTNERS, L.P. IN SUPPORT OF ITS MOTION TO
<u>DISMISS THE COMPLAINT</u>**

In its complaint, the plaintiff – a litigation trustee representing the interests of hedge fund investors who purchased a portion of Meridian's debt in the secondary debt market at significant discounts – describes a broad conspiracy by Meridian's directors and certain "insider" investors to extract value from Meridian for the insiders' benefit. The plaintiff alleges that these insider investors appointed directors to Meridian's board, controlled Meridian through those directors and the exercise of board "observation rights," and used their control to cause Meridian to repay to them debt that was not yet due.

The plaintiff's 172-paragraph, 61-page complaint, however, contains virtually no allegations against Goldman Sachs Credit Partners L.P. ("GSCP"). There is good reason for that: alone among the corporate defendants, GSCP was not an investor in Meridian, was not an insider of Meridian, had no involvement – through the appointment of directors, observation rights, or otherwise – in Meridian's management or operations, and did not receive a penny of the approximately $60 million that Meridian paid to its private equity investors at the heart of the conspiracy allegations. Indeed, the complaint contains only two allegations specific to GSCP's involvement: that Meridian retained GSCP in the normal course to act as joint arranger of the April 2004 refinancing, and that GSCP did so and was paid a customary fee of approximately $3.8 million, an amount that the plaintiff does not allege was out of the ordinary for similar transactions. (Compl. ¶¶ 1, 53, 79).

None of this, of course, is actionable. To create the appearance of wrongdoing, however, the plaintiff resorts to impermissible group pleading, using defined terms and undifferentiated allegations to lump GSCP in with the insider directors, officers, and private equity investors who are alleged to have violated their duties to Meridian. That scattershot tactic

violates Rule 9(b) (which applies to all of the plaintiff's purported tort-based claims since they are grounded in a fraudulent conspiracy), and the plaintiff's claims fail to allege essential elements in all events under clear New York law.  Finally, there is no basis in the law of "fraudulent conveyance" to recoup GSCP's fee for performing customary contractual services as an arranger of a loan.

## STATEMENT OF FACTS[1]

Meridian is a Michigan corporation and manufacturer of automobile bumpers and other parts.  (Compl. ¶ 2).  In late 2003 and early 2004, Meridian was financed by Bank of America, N.A., which had extended approximately $335 million to Meridian under a term loan, and by various institutional investors, which together had loaned Meridian more than one hundred million dollars and which had contractual rights either to appoint Meridian directors or to exercise "observation rights" at Meridian's board meetings.  (*Id.* ¶¶ 1, 13, 15-26).

The institutional investors, which held certain notes comprising Meridian's "mezzanine debt," had the right to appoint directors to Meridian's board of directors and to exercise "observation rights" at Meridian's board meetings.  (*Id.* ¶ 57).  According to the Complaint, these institutional defendants "used their control of Meridian to force the board to condition a proposed refinancing on an $80 million payment to the holders of the 'mezzanine debt,' . . . ."  (*Id.* ¶ 75).  Putting aside whether these allegations give rise to a claim against these many other institutional defendants, GSCP did not, and is not alleged to have, played any role in these actions.

---

[1] The facts set forth here, and elsewhere in this brief, are based on the allegations of the Complaint, which, solely for the purpose of deciding a motion to dismiss, are presumed to be true.  *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995).  In addition, the full text of any document specifically quoted or referred to in a complaint may be considered by a court on a motion to dismiss.  *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 809 (2d Cir. 1996).

Indeed, the Complaint makes only passing reference to GSCP as party to an entirely benign and customary commercial relationship.  On March 10, 2004, Meridian executed an Authorization Letter with GSCP and defendant Credit Suisse First Boston ("CSFB"), pursuant to which GSCP and CSFB were authorized to distribute an information memorandum about the terms of the refinancing to prospective lenders.  (*Id.* ¶ 79).  The April 2004 refinancing was ultimately implemented pursuant to a series of credit agreements, including a First Lien Credit Agreement and Second Lien Credit Agreement.  (*Id.* ¶ 93).  GSCP and CSFB arranged the loan, and Meridian paid approximately $3.8 million in fees to GSCP for its role in arranging the 2004 refinancing.  (*Id.* ¶ 91).  GSCP served in a "right side" arranging role, meaning that it acted as a secondary arranger with CSFB taking the lead.

On the strength of these benign allegations about providing entirely customary arranger services, the plaintiff asserts five substantive causes of action against GSCP, including (1) Aiding and Abetting Breaches of Fiduciary Duties, (2) Civil Conspiracy to Commit Breaches of Fiduciary Duties, (3) Gross Negligence, (4) Intentional Fraudulent Transfers, and (5) Constructive Fraudulent Transfers.[2]  GSCP now moves, pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety as to it.

---

[2]     The complaint includes two other counts, one for "Turnover of Avoided Transfers" under Section 550 of the Bankruptcy Code and one for "Attorney's Fees," which cannot stand as independent causes of action absent a valid underlying claim.  *In re Mako, Inc.*, 127 B.R. 471, 473 (Bankr. E.D. Okla. 1991) (Section 550 is "a secondary cause of action" which "stands as a recovery statute only and not as a primary avoidance basis for an action, as it will only survive when coupled with the transfer avoidance sections of the Code"), citing *In re O.P.M. Leasing Services, Inc.*, 32 B.R. 199, 202 (Bankr. S.D.N.Y. 1983).  Because the plaintiff's avoidance claims must be dismissed, see Point IV, *infra*, its claim under Section 550 likewise must be dismissed.

Similarly, plaintiff's claim for attorneys' fees is not an independent cause of action, and under New York law attorneys' fees "are not recoverable in an action" in the absence of a statute or contract which provides for such recovery.  *Fernandez v. Koretz*, 700 N.Y.S.2d 888, 888 (App.Div. 1999).  Because the plaintiff's substantive claims must be dismissed

**ARGUMENT**

**I.      THE PLAINTIFF'S ALLEGATIONS AGAINST GSCP FAIL TO SATISFY RULE 9(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

The gravamen of the plaintiff's complaint, which pervades its tort-based claims against all defendants, is a massive conspiracy to defraud Meridian and its creditors by "looting" Meridian's assets and paying them to third parties. (*See* Compl. ¶¶ 1, 124-131). This is equally true as to GSCP, which is sued on the basis – never particularized in the complaint – that it somehow became party to an agreement to surreptitiously waste Meridian's assets by paying them to third parties. (*Id.*)

Where, as here, a complaint sounds in conspiracy and fraud, Rule 9(b) fully applies even if the plaintiff's claims are denominated in other terms. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (affirming dismissal of claims of interference with economic advantage, interference with fiduciary relationship, and civil conspiracy for failure to satisfy Rule 9(b), where those claims sounded in fraud); *Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 961 (5th Cir.1994) (claim of civil conspiracy to commit fraud falls under Rule 9(b)); *see also*, *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027-28 (9th Cir. 2005) (applying Rule 9(b) where substance "sound[ed] in fraud"); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004) (applying Rule 9(b) where "core theory of fraud permeates the entire [complaint] and underlies all of Plaintiffs' claims"); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (Rule 9(b) applies to claims that "sound in fraud") (citing cases). Indeed, "Rule 9(b) applies by its plain language to all averments of fraud,

---

and it has not pleaded a contractual basis for the recovery of such fees, plaintiff's attorneys' fees claim must be dismissed.

whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

The plaintiff's allegations against GSCP fall far short of satisfying Rule 9(b), which requires averments of fraud and conspiracy to be stated with particularity. Fed. R. Civ. P. 9(b). The complaint does not even attempt to specify when GSCP joined the alleged conspiracy, how it did so, or – more importantly – *why* GSCP would join a conspiracy that benefited others but not itself. Indeed, the only allegations in the complaint relating to GSCP is that it performed typical services as an arranger in connection with the refinancing and earned customary fees for doing so. (Compl. ¶ 92). Rule 9(b) requires more. *See Am. High-Income Trust v. Alliedsignal*, 329 F. Supp. 2d 534, 545 (S.D.N.Y. 2004) ("'a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter'" under Rule 9(b)) (citation omitted); *Castillo v. Dean Witter Discover & Co.*, No. 97 Civ. 1272, 1998 WL 342050, at *10 (S.D.N.Y. June 25, 1998) ("allegations that defendants 'stand[] to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)'").

Nor does the plaintiff's speculation that GSCP may have wanted to position itself to act as "future IPO advisor" to Meridian satisfy the plaintiff's burden. (Compl. ¶ 92). First, alleging that GSCP may have wanted to play a future role with Meridian does not satisfy Rule 9(b). *Am. High Income*, 329 F. Supp. 2d at 545-46 (Rule 9(b) not satisfied by allegation that defendant wanted a financial "relationship ... with a company [defendant] knew was committing fraud"). Second, the notion that GSCP would conspire to "loot" a company that it wanted to take public makes no economic sense and does not support an inference of conspiracy. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986) ("if

[defendants] had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy."). Third, to the extent the plaintiff avers this motive at all, it is only in connection with GSCP's arranging of the April 2004 refinancing, *not* with respect to the alleged conspiracy to "loot" the proceeds of the refinancing. (Compl. ¶ 92).

Rule 9(b) is designed to "safeguard [a defendant's] reputation from improvident charges of wrongdoing, and to protect [him] against [strike suits]." *Rombach*, 355 F.3d at 171. All that the plaintiff has done in this case is to state that GSCP performed (and was paid for performing) its contractual duty to Meridian to arrange a refinancing, and then to assert that GSCP must have participated in a massive conspiracy because certain insiders allegedly caused Meridian to pay the proceeds of the refinancing to themselves. By that logic, the plaintiff could have sued anyone involved in any capacity in the refinancing. Because the complaint fails to state its averments of fraud and conspiracy with particularity, the Court should dismiss the complaint[3] as to GSCP.

## II.    THE ECONOMIC LOSS RULE BARS THE PLAINTIFF'S TORT CLAIMS

Beyond their hopeless lack of particularity, plaintiff's tort claims against GSCP must be dismissed under New York's economic loss rule. The economic loss doctrine limits plaintiffs who have suffered economic loss, but not personal or property injury, to a contract action for the benefit of their bargain. *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 277 (S.D.N.Y. 2004); *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, No. 99 Civ. 3794, 2003 WL 22118977, at *27 (S.D.N.Y. Sept. 11, 2003). The basic principle is that, if

---

[3]     The only count of the complaint to which Rule 9(b) does not apply is the cause of action alleging that GSCP received a constructive fraudulent conveyance. That claim must be dismissed for the reasons set forth in Point IV, *infra*.

the damages sought are of the sort remediable in contract – which is to say, economic – a plaintiff cannot recover in tort and the action should be one for breach of contract. *Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02 Civ. 2628, 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004); *PPI Enters.*, 2003 WL 22118977, at *10; *Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376 (S.D.N.Y. 2002). Put differently, a simple breach of contract will not be considered a tort unless the defendant violates a legal duty independent of the contract itself. *Green Hills (USA), L.L.C. v. Aaron Streit, Inc.*, 361 F. Supp. 2d 81, 89 (E.D.N.Y. 2005); *Shop Vac Corp. v. BCL Magnetics Ltd.*, No. 04 Civ. 262, 2005 WL 2739161, at *6 (N.D.N.Y. Oct. 24, 2005).

The economic loss doctrine bars the plaintiff's aiding and abetting, conspiracy, and gross negligence claims against GSCP. The agreement entered into between GSCP and Meridian forms the sole basis for their relationship, and any duties that GSCP might have owed to Meridian necessarily arose from that contract. (*E.g.*, Compl. ¶ 79). The plaintiff does not allege any facts against GSCP that would give rise to a legal duty independent of the parties' contract. In addition, the damages that the plaintiff seeks are economic, not for personal or property damage. To the extent the plaintiff could assert any claims against GSCP, it would have to proceed under the parties' contract.[4] *PPI Enters.*, 2003 WL 22118977, at *10; *Shred-It USA Inc.*, 222 F. Supp. 2d at 378.

---

[4]    Any such claim would also be subject to dismissal, because the plaintiff admits that GSCP performed its contractual duties to arrange Meridian's 2004 refinancing. (Compl. ¶¶ 1 (discussing the closing of the 2004 refinancing), 53 (acknowledging that GSCP was paid approximately $3.8 million "in connection with [its] actions in arranging the 2004 refinancing . . . .")).

### III.    THE PLAINTIFF'S TORT CAUSES OF ACTION FAIL FOR OTHER INDEPENDENTLY DISPOSITIVE REASONS

Even were plaintiff's tort-based claims permitted by the economic loss doctrine, the complaint fails to allege essential elements of those claims (much less with the particularity required by Rule 9(b)).

### A.    The plaintiff's aiding and abetting claim must be dismissed because GSCP's actions do not constitute aiding and abetting under New York law.

Under New York law, a defendant may be found liable for aiding and abetting only where it had actual knowledge of the underlying breach and substantially assisted the primary breach. *Pension Comm. of the Univ. of Montreal Pension Plan v. Bank of America Sec., LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006). The plaintiff has not adequately pleaded either element.

Actual knowledge means just that: the defendant must have actually known of the underlying duty and breach. *Montreal Pension Plan*, 446 F. Supp. 2d at 202 ("actual knowledge is required, rather than a lower standard such as recklessness or willful blindness"); *Albion Alliance Mezzanine Fund, L.P. v. State Street Bank & Trust Co.*, 797 N.Y.S.2d 699, 706 (Sup. Ct. 2003), *aff'd*, 767 N.Y.S.2d 619 (App.Div. 2003). Although the plaintiff purports to allege that the *other* defendants had actual knowledge that Meridian's directors were breaching their fiduciary duties, noticeably absent from the complaint are any facts that would even suggest that *GSCP* had such knowledge. The plaintiff purports to allege that the other defendants had actual knowledge of the breaches because they were insiders who appointed Meridian's directors, attended Meridian's board meetings, and used their control to affirmatively cause the directors to prefer the insiders' interests over Meridian's. (Compl. ¶¶ 1, 13-30). Whether those allegations suffice as to the other defendants, the only factual allegations against GSCP are that Meridian retained it to jointly arrange the 2004 refinancing, that it did so, and that Meridian paid

GSCP for its services.  (*Id.* ¶¶ 53, 79).  Those allegations simply cannot satisfy the plaintiff's burden of pleading that GSCP had actual knowledge of the directors' breaches.[5]

Nor has the plaintiff come close to satisfying the second prong, which would require it to allege that GSCP provided "substantial assistance" to the directors in breaching their fiduciary duties.  "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."  *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (App. Div. 2003).  Inaction or silence on the part of an alleged aider and abettor will constitute substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.  *King v. George Schonberg & Co.*, 650 N.Y.S.2d 107, 108 (App. Div. 1996).

In this case, GSCP's alleged wrongdoing consists of nothing more than the performance of its contractual duties to Meridian in the ordinary course (which is to say, the arranging of Meridian's 2004 refinancing).  GSCP was not an investor in Meridian, had no control over Meridian, was not a Meridian insider, and received no payments from Meridian other than its fees for arranging the refinancing.  (*See* Compl., *passim*).  The plaintiff itself acknowledges that GSCP acted pursuant to a contract with Meridian.  (*Id.* ¶ 79 (referring to Authorization Letter pursuant to which Meridian requested that GSCP and CSFB send an information memorandum to prospective lenders)).  Under New York law, a defendant's mere performance of its contractual duties does not constitute the "substantial assistance" necessary to

---

[5]     The plaintiff's use of defined terms to group defendants together and then allege that the group had actual knowledge does not suffice to state a claim.  (*See* Compl. ¶ 117). *Ritchie Capital Management, L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494, 2007 WL 2044656, at *9 n.7 (S.D.N.Y. July 17, 2007) (rejecting use of defined term grouping four corporate defendants, holding that "[t]his allegation would not support a claim against any of the individual defendants, and engages in impermissible group pleading as to the corporate defendants.").

a finding of aiding of aiding liability. In *In re Sharp Int'l Corp.*, 403 F.3d 43, 51 (2d Cir. 2005), for example, the Second Circuit held that a bank that exercised its contractual rights to demand repayment of a debt could not be found to have participated in or substantially assisted an alleged fraud. While not directly on point, *In re Sharp* is equally applicable here; it stands for the proposition that acting pursuant to a contract does not expose a defendant to liability for aiding and abetting. *Id.* Indeed, under the plaintiff's theory, GSCP could have avoided aiding and abetting liability only by breaching its contract with Meridian. There is no basis in New York law for that result.

       **B.**    **The plaintiff's conspiracy claim should be dismissed as duplicative.**

       Under New York law, a conspiracy claim is duplicative of an aiding and abetting claim and should be dismissed where, as here, both are alleged. *See Am. Baptist Churches of Metro. New York v. Galloway*, 710 N.Y.S.2d 12, 17-18 (App. Div. 2000)(dismissing conspiracy to breach fiduciary duty claim as redundant because plaintiffs also pleaded the torts of aiding and abetting a breach of fiduciary duty, diversion of corporate opportunity, and fraud); *see also Durante Bros. & Sons, Inc. v. Flushing Nat'l. Bank*, 755 F.2d 239, 249 (2d Cir. 1985) (conspiracy claim found to be properly dismissed because it was redundant).

       **C.**    **Plaintiff's gross negligence claim does not state a claim under New York law.**

       Plaintiff's gross negligence claim must be dismissed because there is no allegation supporting any extra-contractual duty to Meridian on which a negligence claim could be based. *Solomon v. City of New York*, 489 N.E. 1294, 1294 (N.Y. 1985) (New York law requires that a plaintiff in a negligence action establish "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom").

       The plaintiff's gross negligence claim rests on the allegations that the defendants failed to preserve Meridian's assets and caused Meridian to use the refinancing proceeds to repay

the institutional investors and pay fees to the arrangers.  (Compl. ¶ 133).  As with its other

claims, though, the plaintiff does not plead any facts which would suggest that *GSCP*, unlike

perhaps the director and officer defendants, had a duty either to "preserve Meridian's assets" or

to prevent Meridian from paying the proceeds of the 2004 refinancing to others.  As noted above,

the plaintiff does not allege that GSCP was a Meridian insider, that it invested in Meridian, that it

appointed Meridian's directors, or that it controlled Meridian in any way.  (Compl., *passim*).

GSCP's only relationship with Meridian was contractual; it was required by its contract to act as

joint arranger for the 2004 refinancing, and the plaintiff admits that GSCP did so.  (Compl. ¶¶ 1,

79).  Because the plaintiff has not pleaded that GSCP had any additional non-contractual duties,

the plaintiff's gross negligence claim must be dismissed as to GSCP.  *Solomon*, 489 N.E. 2d at

1294.

## IV.    THE PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS FOR AIDING AND ABETTING, AND CIVIL CONSPIRACY TO COMMIT, BREACHES OF FIDUCIARY DUTIES.

Even if plaintiff's tort-based claims were otherwise viable, under New York law a

bankruptcy trustee lacks standing to assert causes of action – like those in the Complaint –

alleging that the debtor's management participated in defrauding the corporation.  *Shearson*

*Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991); *In re Mediators, Inc.*, 105 F.3d

822, 826 (2d Cir. 1997).  This rule "derives from the fundamental principle of agency that the

misconduct of managers within the scope of their employment will normally be imputed to the

corporation."  *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000).  "Because

management's misconduct is imputed to the corporation, and because a trustee stands in the

shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that

he himself essentially took part in."  *Id.* at 87.  This rule applies equally to claims for aiding and

abetting the breach of fiduciary duties to a corporation. *In re Mediators, Inc.*, 105 F.3d 822, 826 (2d Cir. 1997).

In *Wagoner*, for example, the Second Circuit held that, under New York law, a bankruptcy trustee had no standing to sue Shearson Lehman Hutton for aiding and abetting the unlawful investment activity of the president and sole shareholder of HMK Management Corporation ("HMK"), a bankrupt corporation. 944 F.2d at 119-20. The president had solicited loans from members of his church in exchange for HMK notes and other paper. *Id.* at 116. He then used the proceeds of the loans to trade on HMK's account at Shearson. *Id.* The trading resulted in substantial losses, and HMK filed for bankruptcy protection. The trustee sued Shearson alleging that it caused the president to engage in excessively speculative trading. *Id.* at 117. The Court concluded that HMK itself had committed fraud because the president, as "HMK's sole stockholder and decision maker, . . . not only knew of the bad investments, but actively forwarded them." *Id.* at 120. The Court held that the trustee lacked standing to assert its claim against Shearson because, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Id.*

The prerequisites to application of the *Wagoner* rule are present here. The plaintiff, a representative of Meridian's estate, asserts that Meridian's directors and senior officers breached their fiduciary duties to Meridian, acting to benefit the institutional investors in Meridian rather than Meridian itself, and that they and Meridian's senior officers "conspired" to loot Meridian's assets. (Compl. ¶¶ 104-116, 125-26). Those directors and officers are Meridian's agents, and their alleged actions are attributable to Meridian itself. *Wagoner*, 944 F.2d at 116; *In re Mediators*, 105 F.3d at 826. As in *Wagoner*, the plaintiff claims that the defendants aided and abetted Meridian's own wrongdoing. The plaintiff lacks standing to bring

that claim, and the *Wagoner* rule bars the plaintiff's aiding and abetting and conspiracy claims.[6]

*Wagoner*, 944 F.2d at 116; *In re Mediators*, 105 F.3d at 826.

## V.    PLAINTIFF'S FRAUDULENT CONVEYANCE ALLEGATIONS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

The plaintiff's fraudulent conveyance allegations must be dismissed as to GSCP. The only payment that Meridian made to GSCP was the payment of GSCP's fees for having jointly arranged the 2004 refinancing.  (Compl. ¶ 53 ("GSCP was paid $3,813,122.52 in connection with Defendant GSCP's actions in arranging the 2004 Refinancing and Revolver Fee [sic].")).  By definition, the payment of that antecedent debt cannot be either a constructive or an intentional fraudulent conveyance.  Moreover, the plaintiff does not plead actual fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

### A.    Meridian's payment of GSCP's fees cannot have been a constructively fraudulent conveyance.

The plaintiff alleges, albeit in conclusory fashion, that the defendants received transfers for which they did not provide reasonably equivalent value.  (Compl. ¶ 158, 160).  In making that allegation, however, the plaintiff does not distinguish between Meridian's payments to insiders on account of their private equity investments, and those to GSCP as arranger.  (*Id.* ¶ 160).  Elsewhere in the Complaint, though, the plaintiff admits that Meridian's only payment to GSCP was for GSCP's services in arranging the 2004 refinancing.  (*Id.* ¶ 53).  As a matter of law, that payment cannot be a fraudulent conveyance.

---

[6]     Although the majority of courts treat the *Wagoner* rule as one of standing (which therefore must be raised under Rule 12(b)(1) of the Federal Rules of Civil Procedure), some have held that application of the doctrine is not one of standing and is subject to dismissal instead under Rule 12(b)(6).  This technical distinction need not be resolved in this case; out of an excess of caution GSCP requests dismissal under both Rules 12(b)(1) and 12(b)(6).

Under New York law and Section 548 of the Bankruptcy Code, a transfer is constructively fraudulent only if it places assets beyond the reach of the debtor's creditors.  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995).  Even if a transfer is preferential as between creditors, it is not fraudulent if the transfer is made to an existing creditor.  *Id.*  As the Second Circuit has stated, "even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors, because '[t]he basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy some of his creditors; it normally does not try to choose among them.'"[7]  *Id.* at 634.  In this case, there is no dispute that GSCP was a creditor of Meridian's when Meridian transferred funds to it.  The plaintiff admits that Meridian retained GSCP to arrange the 2004 refinancing, that GSCP did so, and that Meridian's only transfer to GSCP was in payment of GSCP's fees for acting as arranger.  (Compl. ¶¶ 1, 53, 79).  Because Meridian's payment to GSCP was in satisfaction of a pre-existing debt, the payment cannot be a fraudulent conveyance.  *HBE Leasing*, 48 F.3d at 633.

Relatedly, Meridian's payment to GSCP cannot have been constructively fraudulent because Meridian by definition received reasonably equivalent value when it paid GSCP's fees.  The payment of those fees resulted in a corresponding cancellation of Meridian's indebtedness to GSCP in the exact amount of the payment.  The cancellation of indebtedness upon receipt of payment in respect of such indebtedness is, by definition, reasonably equivalent

---

[7]     GSCP's different position vis-à-vis the other defendants is further emphasized by the plaintiff's inability to assert a preference claim against it.  Because of the time period that elapsed between the 2004 refinancing and Meridian's bankruptcy filing, the plaintiff can assert preference claims only against insiders (because non-insider preference claims are subject to a 90-day limitation period).  11 U.S.C. § 547.  The plaintiff's inability to allege that GSCP was an insider, and its decision not to assert a preference claim against GSCP, is a tacit admission that GSCP is differently situated than the other defendants.

value.  *See In re Sharp*, 403 F.3d at 53 (finding that repayment of a valid debt to a lender was not

a fraudulent conveyance and affirming dismissal of the complaint).

        The plaintiff's allegation that GSCP knew that Meridian was insolvent at the time

of the payment is irrelevant.  *In re Sharp*, 403 F.3d at 54.  As the Second Circuit has held, "a

conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither

fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another.  *It is of*

*no significance that the transferee has knowledge of such insolvency*.  Nor is the transfer subject

to attack by reason of knowledge on the part of the transferee that the transferor is preferring him

to other creditors, even by virtue of a secret agreement to that effect."  *Id.* at 54-55 (emphasis

added), quoting *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 599 N.Y.S.2d 816 (App.

Div. 1993).

    **B.**    **The plaintiff's intentional fraudulent conveyance claim must be dismissed because the plaintiff's fraud allegations are not pleaded with the particularity required by Rule 9(b), and because a payment to an existing creditor cannot be fraudulent.**

        As set forth in Point I, *supra*, the plaintiff's allegations of actual fraud are not

pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  The

plaintiff's allegations fail even in the bankruptcy context, in which some courts permit plaintiffs

to satisfy Rule 9(b) by alleging "badges of fraud," including, among others, (1) inadequacy of

consideration; (2) the closeness of the relationship between parties to the transfer; (3) suspicious

timing of the conveyance; (4) use of fictitious parties or secrecy; and (5) retention of control of

the property by the transferor after the transfer.  *Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr.*

*Co.*, 375 F. Supp. 2d 257, 268-69 (S.D.N.Y. 2005); *MFS/SUN Life Trust-High Yield Series v.*

*Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995).  Although the plaintiff

arguably might have alleged certain badges of fraud as to *other* defendants, it has not alleged any

as to GSCP. As set forth above, Meridian received exactly equivalent value for its payment to GSCP. Unlike its relationship with the insider defendants, Meridian's relationship with GSCP was purely contractual and is not alleged to have been anything but at arms'-length. There is nothing suspicious about the timing of the payment: the payment was made on closing of the refinancing which GSCP had jointly arranged. There was no secrecy surrounding the payment, and Meridian did not retain control over the payment after it was made. In short, the plaintiff has not alleged that Meridian's payment to GSCP bore any indicia of actual fraudulent intent, and its claim must be dismissed. *Eclaire Advisor Ltd.*, 375 F. Supp. 2d at 268-69.

Indeed, other than a conclusory allegation that Meridian made payments to the defendants with actual intent to hinder, delay, or defraud its creditors, (*see* Compl. ¶¶ 148, 160), the plaintiff fails to allege any facts suggesting fraud in connection with Meridian's $3.8 million payment to GSCP. Consistent with the plaintiff's approach in the rest of its complaint, the plaintiff attempts to muddy the waters by grouping Meridian's payment to GSCP (which the plaintiff admits was made on account of a pre-existing debt) with the more than $60 million in payments to Meridian's institutional insider investors and arguing that the payments, together, were intended to defraud Meridian's creditors. (Compl. ¶ 153 ("The transfers set forth above totaling over $80 million were substantially all of Meridian's unencumbered assets.")). But the allegation that the payments to the insiders were fraudulent does not mean that the payment to GSCP was also fraudulent. To the contrary, because Meridian's payment to GSCP was on account of an antecedent debt, the payment could not have hindered, delayed, or defrauded Meridian's creditors. In *Sharp*, the Second Circuit held that the use of proceeds of an allegedly fraudulent refinancing to pay pre-existing debts could not hinder, delay, or defraud other creditors, because fraudulent conveyance laws are intended to ensure only that a debtor's money

be paid to its creditors, regardless of *which* creditors are paid. *Id.*, 403 F.3d at 56. Similarly, Meridian's use of proceeds of the 2004 refinancing to pay fees owed to GSCP satisfied an antecedent debt and therefore, as a matter of law, did not "hinder, delay, or defraud either present or future creditors." *Id.*

## CONCLUSION

For the foregoing reasons, the law and the facts require the dismissal of the complaint in its entirety as to GSCP.

Dated:     New York, New York
           August 17, 2007

                                    Respectfully submitted,

                                    Linklaters LLP

                                    By:    /s/ Paul S. Hessler                      
                                    R. Paul Wickes
                                    Paul S. Hessler
                                    1345 Avenue of the Americas
                                    New York, NY 10105
                                    (212) 903-9000
                                    (212) 903-9100 (fax)

                                    *Attorneys for Defendant Goldman Sachs Credit Partners L.P.*