# EXHIBIT A

## NOTE AND WARRANT AGREEMENT

THIS NOTE AND WARRANT AGREEMENT (this "Agreement") is entered into as of the 24th day of March, 2004, by and among MERIDIAN AUTOMOTIVE SYSTEMS, INC., a Michigan corporation, formerly known as AMERICAN BUMPER & MFG. CO. (the "Company"), SKOOG FAMILY INVESTMENTS, LLC, a Michigan limited liability company (the "LLC"), JACK C. SKOOG, a resident of the State of Florida ("Skoog"), and CRAIG VAN ESS (solely for purposes of Section 2.2 hereof), a resident of the State of Michigan ("Van Ess").

### RECITALS

WHEREAS, the LLC is the owner of (i) $23,092,542.45 aggregate principal amount of promissory notes of the Company, consisting of an Amended and Restated Installment Note dated as of March 29, 2001 (such note and all accrued and unpaid interest thereon being referred to as the "Amended Note"), and certain additional notes (such notes and all accrued and unpaid interest thereon being referred to as the "Additional Notes"), the issue dates and principal amounts of which (including the Amended Note) are set forth on Exhibit A hereto (collectively, including the Amended Note, the "Notes"), and (ii) a Common Stock Purchase Warrant, entitling the holder thereof to purchase 1,377.6495 shares of Class A Common Stock, par value $.01 per share, of the Company (the "Warrant");

WHEREAS, the Company intends to pursue a refinancing of its credit facilities, including entering into a new Revolving Credit Facility, a new Tranche B Term Facility, and a new Tranche C Term Facility, the partial prepayment of a portion of the Subordinated Notes issued under the Third Amended and Restated Subordinated Note Agreement (the "Subordinated Note Agreement") dated as of March 29, 2001, the further amendment and restatement of such Subordinated Notes and the Subordinated Note Agreement and certain related transactions (the "Refinancing"); and

WHEREAS, in connection with the Refinancing, and pursuant to the provisions of this Agreement, (i) the Company desires to purchase the Notes from the LLC, and the LLC desires to sell the Notes to the Company, and (ii) the LLC and the Company desire to cancel the Warrant (the Notes and the Warrant being collectively referred to herein as the "Skoog Securities").

NOW THEREFORE, in consideration of the representations, warranties and covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I

#### Purchase and Sale of Notes; Cancellation of Warrant

1.1  Purchase and Sale of Notes. Upon the terms and conditions set forth in this Agreement, the Company shall purchase from the LLC, and the LLC shall sell, transfer and convey to the Company, all right, title and interest in and to the Notes, effective as of the closing of the Refinancing (the "Effective Date"). The

CHI 10680639.12

purchase and sale of the Notes shall take place on the Effective Date at the New York offices of Debevoise & Plimpton LLP (the "Closing").

1.2 <u>The Purchase Price</u>. The Company shall pay $6,700,000 (the "Purchase Price") to the LLC, as full consideration for the purchase of the Notes. The parties agree that the full Purchase Price shall be allocated to the repayment of principal of the Notes.

1.3 <u>Payment of the Purchase Price</u>. The Purchase Price shall be paid by the Company to the LLC on the Effective Date by wire transfer of funds to such bank account as shall be designated in writing by the LLC to the Company at least one (1) business day prior to the Effective Date.

1.4 <u>Cancellation of Warrant</u>. In consideration for the purchase and sale of the Notes, on the Effective Date, at the Closing, the Warrant shall be cancelled and extinguished, and shall be of no further force and effect whatsoever.

## ARTICLE II

### Other Transactions

2.1 <u>Amendment of Consulting Agreement; Consulting Fee Payment</u>. As of the Effective Date, the Company and Skoog shall enter into Amendment No. 2 to the Consulting Agreement dated April 30, 1997, as amended by Amendment No. 1 dated March 29, 2001 (the "Consulting Agreement") in the form of <u>Exhibit B</u> hereto (the "Amendment"). In connection with the execution and performance of the Consulting Agreement, as amended by the Amendment, the Company shall pay to Skoog the sum of $75,000.00 (the "Consulting Fee Payment"). The Consulting Fee Payment shall be in full satisfaction of the Company's obligation to pay Skoog any consulting fee for the remainder of calendar year 2004. The Consulting Fee Payment shall be paid by the Company to Skoog on the Effective Date, by either (a) cashier's check, or (b) wire transfer to an account designated in writing by Skoog to the Company at least one (1) business day prior to the Effective Date.

2.2 <u>Release</u>. As of the Effective Date, the LLC, Skoog, Van Ess and the Company shall enter into a release in the form of <u>Exhibit C</u> hereto (the "Release").

2.3 <u>Shareholders Agreement</u>. As of the Effective Date, the LLC and Skoog shall cease to be a party to, and shall cease to have any rights whatsoever under, the Shareholders Agreement dated as of April 30, 1997, by and among the Company and its shareholders, as amended (the "Shareholders Agreement"). The LLC and Skoog shall execute and deliver any amendment to the Shareholders Agreement and take any and all other actions reasonably requested by the Company solely to effectuate the foregoing.

2

2.4 <u>Resignation</u>. As of the Effective Date, the LLC and Skoog shall cause any and all nominee(s) of the LLC or Skoog (the "Skoog Nominee(s)") serving on the Board of Directors of the Company to resign therefrom.

## ARTICLE III

### Representations and Warranties

3.1 <u>Representations and Warranties of the LLC and Skoog</u>. The LLC and Skoog represent and warrant, jointly and severally, to the Company as follows:

    (a) <u>Authority</u>. Each of the LLC and Skoog has full power and authority to enter into and perform this Agreement and the other agreements and instruments executed and delivered by each of them pursuant to this Agreement (collectively, including this Agreement, the "Skoog Agreements") in accordance with their respective terms. Except for the subordination provisions contained in the Notes, neither the LLC nor Skoog is bound by or subject to any contractual or other obligation or restriction that would be violated by the execution or performance of any of the Skoog Agreements, and the execution, delivery and performance of each of the Skoog Agreements have been duly authorized by all necessary limited liability company or other action. Each of the Skoog Agreements is, or upon execution and delivery will be, the valid and binding obligation of the LLC and/or Skoog, as applicable, enforceable against such party or parties in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other similar laws applicable to the LLC or Skoog affecting the rights of creditors generally, and except that the remedy of specific performance and injunctive and other forms of equitable relief are subject to certain equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

    (b) <u>Consents</u>. No consent, action, approval or authorization of, or registration, declaration or filing with, any governmental department, commission, agency or other instrumentality having jurisdiction over the LLC or Skoog is required to be obtained by the LLC or Skoog to authorize the execution and delivery by the LLC or Skoog of any of the Skoog Agreements or the performance by the LLC or Skoog of the Skoog Agreements.

    (c) <u>Ownership of Skoog Securities</u>. The LLC owns of record and beneficially all of the Skoog Securities free and clear of any claim, lien, security interest, encumbrance, restriction, option or charge whatsoever. There are no restrictions of any kind (other than restrictions imposed by Federal or state securities laws) with respect to the Skoog Securities which would restrict the transfer of the Notes by the LLC to the Company or the cancellation of the Warrant in accordance with the terms of this

3

Agreement. Upon delivery of the Skoog Securities by the LLC to the Company as provided herein, the Company will have good and marketable title to the Notes, free of any claim, lien, security interest, encumbrance, restriction, option or charge whatsoever arising from or through the LLC or Skoog, and the Warrant shall be relinquished for cancellation and extinguishment.

(d) Sole Holder. The LLC is the sole holder of all rights and interests in, to and under the Skoog Securities, has not granted any participation or other interest in any of the Skoog Securities to any other party and has sole authority to sell all rights and interests in, to and under the Notes to the Company and to surrender for cancellation the Warrant as contemplated by the terms of and subject to the conditions of this Agreement.

(e) No Other Securities. Except for the Skoog Securities, neither the LLC nor Skoog owns or holds any notes, stock or other securities of or interests in the Company, or any interests therein, any securities convertible thereinto or exchangeable therefor, or any right to acquire any notes, stock or other securities of or interests in the Company.

3.2 Representations and Warranties of the Company. The Company represents and warrants to the LLC and Skoog as follows:

(a) Authority. The Company has full corporate power and authority to enter into and perform this Agreement and the other agreements and instruments executed and delivered by the Company pursuant to this Agreement (collectively, including this Agreement, the "Company Agreements") in accordance with their respective terms. Except for the subordination provisions and other restrictions contained in the Notes and certain other agreements to which the Company is a party which are proposed to be amended, terminated or waived in connection with the Refinancing (the "Restrictive Provisions"), the Company is not bound by or subject to any contractual or other obligation or restriction that would be violated by the execution or performance of any of the Company Agreements. Upon amendment, termination or waiver of the Restrictive Provisions as aforesaid and approval of this Agreement and the transactions contemplated hereby by the Board of Directors of the Company, the execution, delivery and performance of each of the Company Agreements will have been duly authorized by all necessary corporate action and each of the Company Agreements, upon execution and delivery will be, the valid and binding obligation of the Company, enforceable against the Company in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other similar laws applicable to the Company affecting the rights of creditors generally, and except that the remedy of specific performance and injunctive and other forms of equitable relief are subject to certai.

4

equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(b) Consents. No consent, action, approval or authorization of, or registration, declaration or filing with, any governmental department, commission, agency or other instrumentality having jurisdiction over the Company is required to be obtained by the Company to authorize the execution and delivery by the Company of any of the Company Agreements or the performance by the Company of the Company Agreements.

## ARTICLE IV

### Deliveries

4.1 Deliveries by the LLC or Skoog to the Company at the Closing. At the Closing, the LLC or Skoog shall deliver or cause to be delivered to the Company the following:

(a) The original Notes, together with an executed assignment of certificate endorsed in blank by the LLC in form and substance satisfactory to the Company;

(b) The original Warrant, together with an executed assignment of certificate endorsed in blank by the LLC in form and substance reasonably satisfactory to the Company;

(c) The Release, duly executed by the LLC, Skoog and Van Ess;

(d) A counterpart of the Amendment, duly executed by Skoog;

(e) Resignation(s) by the Skoog Nominee(s) from the Board of Directors of the Company executed by the Skoog Nominee(s) and in form and substance reasonably satisfactory to the Company; and

(f) Any other documents or instruments as the Company may reasonably request in connection with the transactions contemplated by this Agreement.

4.2 Deliveries by the Company to the LLC or Skoog at the Closing. At the Closing, the Company shall deliver or cause to be delivered to the LLC or Skoog the following:

(a) The Purchase Price;

(b) The Consulting Fee Payment;

(c) A counterpart of the Amendment, duly executed on behalf of the Company;

(d) The Release, duly executed by the Company; and

(e) Any other documents or instruments as the LLC or Skoog may reasonably request in connection with the transactions contemplated by this Agreement.

## ARTICLE V

### Covenants

5.1 <u>Covenants of the LLC and Skoog</u>. The LLC and Skoog hereby covenant and agree, jointly and severally, with the Company as follows:

    (a) <u>Restrictions on Transactions</u>. Unless this Agreement shall have been duly terminated pursuant to Section 7.1 hereof, neither the LLC nor Skoog shall sell, assign, transfer, hypothecate or otherwise dispose of any of the Skoog Securities or any interest therein, to any party other than the Company.

    (b) <u>Reasonable Commercial Efforts</u>. The LLC and Skoog shall cooperate fully with the Company and shall use their reasonable commercial efforts to complete the transactions contemplated hereby and shall take such reasonable actions as shall be necessary or appropriate in connection therewith, including, without limitation, delivery of the documents and other items referred to in Section 4.1 of this Agreement.

5.2 <u>Covenants of the Company; Reasonable Commercial Efforts</u>. The Company shall cooperate fully with the LLC and Skoog and shall use its reasonable commercial efforts to complete the transactions contemplated hereby and shall take such reasonable actions as shall be necessary or appropriate in connection therewith, including, without limitation, delivery of the documents and other items referred to in Section 4.2 of this Agreement.

## ARTICLE VI

### Conditions to Closing

6.1 <u>Conditions to Obligation of the LLC and Skoog</u>. The obligation of the LLC and Skoog to consummate and effect the transactions contemplated by this Agreement shall be subject to satisfaction at or prior to the Effective Date of the following conditions (any of which may be waived, in whole or in part, by the LLC and Skoog):

    (a) <u>Representations and Warranties</u>. The representations and warranties of the Company contained in this Agreement shall be true and correct on the Effective Date as if made on the Effective Date; the Company shall have performed all agreements and covenants required by this Agreement to be performed by it on or prior to the Effective Date; and the Company shall

6

have delivered to the LLC and Skoog a certificate to such effect, dated the Effective Date and signed by a duly authorized officer of the Company.

 (b) <u>Restrictive Provisions</u>. The Restrictive Provisions shall have been waived or amended so as to allow the consummation of the transactions contemplated hereby.

 (c) <u>Closing Deliveries</u>. The Company shall have delivered to the LLC and Skoog the documents and other items referred to in Section 4.2 of this Agreement.

6.2 <u>Conditions to Obligation of the Company</u>. The obligation of the Company to consummate and effect the transactions contemplated by this Agreement shall be subject to satisfaction at or prior to the Effective Date of the following conditions (any of which may be waived, in whole or in part, by the Company):

 (a) <u>Representations and Warranties</u>. The representations and warranties of the LLC and Skoog contained in this Agreement shall be true and correct on the Effective Date as if made on the Effective Date; the LLC and Skoog shall have performed all agreements and covenants required by this Agreement to be performed by them on or prior to the Effective Date; and the LLC and Skoog shall have delivered to the Company a certificate to such effect, dated the Effective Date and signed by a duly authorized representative of the LLC and Skoog.

 (b) <u>Restrictive Provisions</u>. The Restrictive Provisions shall have been waived or amended so as to allow the consummation of the transactions contemplated hereby.

 (c) <u>Board Approval</u>. The Board of Directors of the Company shall have duly approved this Agreement and the transactions contemplated hereby.

 (d) <u>Closing Deliveries</u>. The LLC and Skoog shall have delivered to the Company the documents and other items referred to in Section 4.1 of this Agreement.

 (e) <u>Refinancing</u>. The Refinancing shall have been consummated on terms acceptable to the Company prior to the Closing, or shall be consummated simultaneously with the Closing.

<u>ARTICLE VII</u>

<u>Termination</u>

7.1 <u>Termination of Agreement</u>. This Agreement may be terminated, and the transactions contemplated may be abandoned, at any time before consummation of the Closing, as follows:

CH1 10680639.12

(a) by mutual written consent of the parties hereto;

(b) by the Company if a material default shall be made by the LLC or Skoog in the observance or in the due and timely performance by the LLC or Skoog of any of the covenants of the LLC or Skoog herein contained, or if there shall have been a material breach by the LLC or Skoog of any of the representations and warranties of the LLC or Skoog herein contained, or if any of the conditions to the obligations of the Company herein contained shall not have been satisfied in all material respects at the time required therefor and such satisfaction shall not have been waived by the Company;

(c) by the LLC and Skoog if a material default shall be made by the Company in the observance or in the due and timely performance by the Company of any of the covenants of the Company herein contained, or if there shall have been a material breach by the Company of any of the representations and warranties of the Company herein contained, or if any of the conditions to the obligations of the LLC and Skoog herein contained shall not have been satisfied in all material respects at the time required therefor and such satisfaction shall not have been waived by the LLC and Skoog; or

(d) by the Company or the LLC and Skoog if the Closing shall not have occurred on or before May 11, 2004, for any reason other than the failure of the party seeking to terminate this Agreement to perform its or his obligations hereunder.

In the event of termination under subparagraphs (b), (c) or (d) of this Section 7.1, the party seeking to terminate this Agreement shall give written notice thereof to the other parties hereto.

## ARTICLE VIII

### Miscellaneous Provisions

8.1 <u>Expenses</u>. Each of the LLC, Skoog and the Company shall pay all of the costs and expenses incurred by it or him in connection with the transactions contemplated hereby.

8.2 <u>Headings</u>. The subject headings of the Articles and Sections of this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of any of its provisions.

8.3 <u>Entire Agreement</u>. This Agreement and the instruments to be delivered by the parties pursuant to the provisions of this Agreement, contain the entire understanding of the parties with respect to the transactions contemplated by this Agreement. There are no representations, warranties, covenants, or undertakings other than those expressly set forth or provided for in this Agreement and such other instruments. This Agreement supersedes all agreements and understandings

between the parties with respect to the transactions contemplated by this Agreement.

8.4 **Modification and Waiver.** No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all the parties.

8.5 **Successors.** This Agreement shall be binding on, and shall inure to the benefit of, the parties and their respective successors and assigns.

8.6 **Nature and Survival of Representations, Warranties and Covenants.** All representations, warranties and covenants made in this Agreement or pursuant to this Agreement shall survive the closing of the transactions contemplated herein.

8.7 **Governing Law.** This Agreement and all transactions contemplated by this Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Michigan, without giving effect to the principles of conflicts of laws thereof.

8.8 **Notices.** Any notice required or desired to be served, given or delivered hereunder shall be in writing (including facsimile transmission), and shall be deemed to have been validly served, given or delivered upon the earlier of (a) personal delivery to the address set forth below, (b) in the case of mailed notice, five (5) days after deposit in the United States mails, with proper postage for certified mail, return receipt requested, prepaid, or in the case of notice by Federal Express or other reputable overnight courier service, one (1) business day after delivery to such courier service, and (c) in the case of facsimile transmission, upon transmission with confirmation of receipt, addressed to the party to be notified as follows:

|  |  |
|---|---|
| If to the Company, to: | Meridian Automotive Systems, Inc.<br>550 Town Center Drive<br>Dearborn, MI 48126<br>Attn: Richard E. Newsted |
| With a copy to: | Meridian Automotive Systems, Inc.<br>550 Town Center Drive<br>Dearborn, MI 48126<br>Attn: Dean P. Vanek |
| If to the LLC or Skoog, to: | Mr. Jack C. Skoog<br>326 Seabreeze<br>Marco Island, FL 34145 |

CH1 10680639.12

        With a copy to:        Varnum, Riddering, Schmidt
&amp; Howlett, LLP
Bridgewater Place
333 Bridge Street, N.W.
Post Office Box 352
Grand Rapids, MI 49501-0352
Attn: Scott A. Huizenga, Esq.

or to such other address as any of the parties may hereafter designate for itself by written notice to the other parties in the manner herein prescribed.

8.9   Counterparts. This Agreement may be executed in counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same Agreement. This Agreement can be executed by facsimile which shall be deemed to be an original for all purposes.

8.10   Further Assurances. The parties hereto agree to execute such documents and take all such actions as may reasonably be required for the consummation of the transactions contemplated hereunder.

8.11   Enforcement Costs. In the event of a dispute arising hereunder or under any instrument contemplated hereby the prevailing party shall be entitled to receive reasonable attorney's fees and expenses incurred in connection therewith.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

MERIDIAN AUTOMOTIVE SYSTEMS, INC.

By: /s/ Richard E. N_____

Name:
Title:


THE SKOOG FAMILY INVESTMENTS, LLC


By: _____

Name:
Title:



_____

Jack C. Skoog



_____

Craig Van Ess, solely for purposes of Section 2.2


[NOTE AND WARRANT PURCHASE AGREEMENT]

11

CH1 10680639.12

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

MERIDIAN AUTOMOTIVE SYSTEMS, INC.

By: _____
    Name:
    Title:


THE SKOOG FAMILY INVESTMENTS, LLC

By: *[signature]*_____
    Name: J. C. Skoog
    Title: Managing Member


*[signature]*_____
    Jack C. Skoog


*[signature]*_____
Craig Van Ess, solely for purposes of
Section 2.2

[NOTE AND WARRANT PURCHASE AGREEMENT]

11