# EXHIBIT 1

## TO THE AFFIDAVIT OF JOHN BYARS IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MERIDIAN AUTOMOTIVE SYSTEMS - COMPOSITES OPERATIONS, INC., et al.,[1] | Case No. 05-11168 (MFW) |
| Debtors. | Jointly Administered |

**FOURTH AMENDED JOINT PLAN OF REORGANIZATION PROPOSED BY THE DEBTORS**

SIDLEY AUSTIN LLP
James F. Conlan
Larry J. Nyhan
Janet E. Henderson
Paul S. Caruso
Bojan Guzina
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Robert S. Brady (No. 2847)
Edward J. Kosmowski (No. 3849)
Edmon L. Morton (No. 3856)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for the Debtors and Debtors in Possession

Dated: December 4, 2006

---

[1] The Debtors are: Meridian Automotive Systems - Composites Operations, Inc., Meridian Automotive Systems, Inc., Meridian Automotive Systems - Angola Operations, Inc., Meridian Automotive Systems - Construction, Inc., Meridian Automotive Systems - Detroit Operations, Inc., Meridian Automotive Systems - Grand Rapids Operations, Inc., Meridian Automotive Systems - Heavy Truck Operations, Inc., Meridian Automotive Systems - Shreveport Operations, Inc., and Meridian Automotive Systems - Mexico Operations, LLC.

On the Effective Date, the Reorganized Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan and to issue, execute and deliver the agreements, documents, securities and instruments contemplated by this Plan in the name of and on behalf of the Reorganized Debtors including, but not limited to the Exit Facility, and all other agreements, documents or instruments executed and delivered in connection therewith pursuant to this Plan, without any further order of the Bankruptcy Court and without the requirement of any further action by the stockholders, creditors or directors of any of the Debtors or the Reorganized Debtors, and the obligations set forth in the Exit Facility shall constitute legal, valid, binding and authorized obligations of each Reorganized Debtor and shall be enforceable in accordance with their terms, and the Reorganized Debtors shall be liable for all obligations arising under or related to the Exit Facility, and all agreements, documents or instruments executed and delivered in connection therewith.

Section 7.11. Preservation of Retained Actions.

In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions. The Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Reorganized Debtors or their successors may pursue such Retained Actions in accordance with their best interests.

Section 7.12. Certain Avoidance Actions.

Subject to (i) the Committee affirmatively supporting confirmation of the Plan and (ii) the occurrence of the Effective Date, none of the Debtors, the Reorganized Debtors or the Litigation Trust will pursue Avoidance Actions against any potential defendant that is a Holder of any General Unsecured Claims in Class 5 of the Plan, in such capacity, other than (i) any Professional who performed accounting or auditing services for any of the Debtors prior to the Petition Date, (ii) those entities (the "Excluded Parties") listed on Exhibit C hereto and (iii) any Holder of a General Unsecured Claims that is, or at any time, was an "insider" within the meaning of Section 101(31) of the Bankruptcy Code, in each case, against which all rights and Avoidance Actions are retained.

Section 7.13. Preservation of Avoidance Actions and Reserved Actions in the Litigation Trust.

On the Effective Date, all Avoidance Actions (other than any Avoidance Actions released pursuant to the terms of this Plan) and the Reserved Actions will be contributed to a trust established for the benefit of Holders of Prepetition First Lien Claim Trust Interests, Prepetition Second Lien Claim Trust Interests, and General Unsecured Claim Trust Interests. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Avoidance Actions and Reserved Actions shall be retained by, and may be enforced by, the Litigation Trust in accordance with the terms and conditions of the Litigation Trust Agreement. The Litigation Trust shall be the representative of the Estates for the enforcement of the Avoidance Actions and Reserved Actions. The Oversight

Committee will appoint and oversee the Litigation Trustee who shall supervise the prosecution, valuation and distribution of the Litigation Trust assets. Reorganized Meridian will provide a limited recourse loan of $2 million to fund the prosecution of the Avoidance Actions and Reserved Actions by the Litigation Trust, which loan will be secured by a first priority lien on proceeds of the Avoidance Actions and Reserved Actions and repaid from the proceeds realized by such trust in accordance with the Litigation Trust Agreement. Additional funding from Reorganized Meridian, if any, for the Litigation Trust may be requested by the Oversight Committee and approved by a majority of the Board of the Reorganized Meridian. In addition, under the Litigation Trust Agreement, the Litigation Trust will be permitted to obtain funding from sources other than Reorganized Meridian.

The Litigation Trust shall provide for the distribution of any recoveries obtained by the Litigation Trust as follows:

(a) Amounts paid to prosecute the Avoidance Actions and the Reserved Actions (including the limited recourse loan to be provided by Reorganized Meridian described above) shall be repaid from the first proceeds realized by the Litigation Trust, except as may otherwise be provided in the Litigation Trust Agreement or any other applicable funding documents.

(b) (i) Prepetition First Lien Claim Trust Interests shall be paid Pro Rata from the trust assets consisting of 30% of the proceeds (after satisfaction of the amounts required to be paid pursuant to section 7.13(a) realized by the Litigation Trust, (ii) Prepetition Second Lien Claim Trust Interests shall be paid Pro Rata from the trust assets consisting of 60% of the proceeds (after satisfaction of the amounts required to be paid pursuant to section 7.13(a) realized by the Litigation Trust, and (iii) the General Unsecured Claim Trust Interests shall be paid Pro Rata from the trust assets consisting of 10% of the proceeds (after satisfaction of the amounts required to be paid pursuant to section 7.13(a) realized by the Litigation Trust; provided that the General Unsecured Claim Trust Interests shall be entitled to a maximum aggregate distribution of $2 million from the trust assets, and thereafter the Prepetition First Lien Claim Trust Interests shall be paid Pro Rata from the trust assets consisting of 30% of the proceeds realized by the Litigation Trust and Prepetition Second Lien Interests shall be paid Pro Rata from the trust assets consisting of 70% of the proceeds realized by the Litigation Trust.

Section 7.14. Intentionally Omitted.

Section 7.15. Intentionally Omitted.

Section 7.16. Exemption From Certain Transfer Taxes.

Pursuant to Section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities pursuant to this Plan (b) the creation of any Lien, mortgage, deed of trust or

Section 9.3. Consequences of Non-Occurrence of Effective Date.

If the Effective Date has not occurred within 120 days of the Confirmation Date (as such may be extended by the Debtors), upon notice to such parties in interest as the Bankruptcy Court may direct, the Debtors will request that the Bankruptcy Court enter an order vacating the Confirmation Order. The Debtors reserve the right to seek any and all appropriate relief from the Bankruptcy Court in the event the Confirmation Order is vacated, including, without limitation, findings or orders of the Bankruptcy Court that (a) this Plan shall be null and void in all respects; (b) any settlement of Claims or Interests provided for hereby shall be null and void; and (c) the time within which the Debtors may assume and assign or reject all executory contracts and unexpired leases shall be extended for an appropriate period after the date the Confirmation Order is vacated.

## ARTICLE X
## EFFECT OF PLAN CONFIRMATION

Section 10.1. Revesting of Assets.

Pursuant to Section 1141(b) of the Bankruptcy Code, except as otherwise explicitly provided in this Plan, on the Effective Date, all property of the Estates, to the fullest extent of section 541 of the Bankruptcy Code, and any and all other rights and Assets of the Debtors of every kind and nature (including the Retained Actions) shall revest in each of the Reorganized Debtors that owned such property or interest in property as of the Petition Date, free and clear of all Liens, Claims and Interests, except as specifically provided for in this Plan and subject to the terms of the Exit Facility. As of the Effective Date, the Reorganized Debtors shall be authorized to operate their businesses and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court and without notice to any party, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, except those restrictions explicitly imposed by this Plan and the Confirmation Order.

Section 10.2. Discharge of Claims and Termination of Meridian Interests.

(a) Pursuant to section 1141(d) of the Bankruptcy Code, and except as provided in the Confirmation Order, the Distributions and rights provided in this Plan and the treatment of Claims and Interests under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, and satisfaction or termination of all Prepetition Meridian Interests, including any interest accrued on Claims from and after the Petition Date. Except as otherwise provided in this Plan or the Confirmation Order, Confirmation shall, as of the Effective Date: (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (x) a proof of claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (y) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code or (z) the holder of a Claim based on such debt has accepted this Plan; and (ii) terminate and cancel all Prepetition Meridian Interests.

(b) As of the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the

Reorganized Debtors, or their respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, cause, transaction, state of facts, or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of discharge of all such Claims and other debts and liabilities against the Debtors and satisfaction, termination or cancellation of all Prepetition Meridian Interests pursuant to Sections 524 and 1141 of the Code, and such discharge will void any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

(c) Nothing in this Plan: (i) discharges, releases, or precludes any environmental liability that is not a Claim, or any environmental claim of the United States that arises on or after the Confirmation Date; (ii) releases the Debtors or Reorganized Debtors from liability under environmental law as the owner or operator of property that such Persons own or operate after the Confirmation Date; (iii) releases or precludes any environmental liability to the United States on the part of any Persons other than the Debtors and Reorganized Debtors; or (iv) enjoins the United States from asserting or enforcing, outside the Bankruptcy Court, any liability described in this paragraph; provided, however, that the Debtors and Reorganized Debtors preserve any and all of their rights and defenses under applicable law with respect to the claims for pre-confirmation violations asserted in the Notice and Finding of Violation, EPA-5-06-OII-12, dated June 23, 2006, regarding the Debtors' operations at their Jackson, Ohio facility. Nothing in this paragraph shall be construed to make the Reorganized Debtors liable for penalties under environmental law for days of violation occurring before the Confirmation Date.

Section 10.3. Releases.

(a) Releases by the Debtors. As of the Effective Date, for good and valuable consideration (including, solely with respect to the Meridian Covered Persons listed on Exhibit A hereto, the execution of a reasonable cooperation agreement, the terms of which are subject to agreement by the Litigation Trustee; provided that any such cooperation agreement shall not require any Meridian Covered Person to take any action which, in such Person's reasonable judgment, may be inconsistent with any obligation imposed pursuant to any directors' and officers' insurance policies under which such Person is an insured party), the adequacy of which is hereby confirmed, the Debtors and Reorganized Debtors in their individual capacities and as Debtors-in-Possession will be deemed to release and forever waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, this Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates or the Reorganized Debtors at any time up to immediately prior to the Effective Date against (i) any of the Meridian Covered Persons and the Debtors' Professionals (excluding any Professional who performed accounting or auditing services for any of the Debtors prior to the Petition Date), (ii) the Prepetition First Lien Lenders, each solely in its capacity as a Prepetition First Lien