UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OCEAN RIDGE CAPITAL ADVISORS, LLC, as Litigation Trustee of THE MAS LITIGATION TRUST,

      Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, CAPITAL D'AMERIQUE CDPQ INC., CAISSE DE DEPOT ET PLACEMENT DU QUEBEC, CSFB LP HOLDING, SKOOG FAMILY INVESTMENTS, LLC, BANCAMERICA CAPITAL INVESTORS II, L.P., WINDWARD/PARK AB III, L.L.C., WINDWARD CAPITAL PARTNERS L.P., WINDWARD CAPITAL, ASSOCIATES, L.P., SUEZ CAPITAL PARTNERS II, L.P., INDOSUEZ CAPITAL CO-INVEST PARTNERS, L.P., SCP II ASSOCIATES, CREDIT SUISSE FIRST BOSTON (USA), INC., CREDIT SUISSE FIRST BOSTON, GOLDMAN SACHS CREDIT PARTNERS L.P., JEFFREY A. ANDERSON, JON F. BAKER, JOSE R. GARCIA, ROBERT H. BARTON III, H.H. WACASER, PETER S. MACDONALD, GARY SWENSON, JOHN F. MAYPOLE, THOMAS GRAHAM, DONALD A. MCKAY, HENRY A. NICKOL, JEFFREY HODGMAN, A. KIPP KOESTER, CRAIG VAN ESS, GURMINDER S. BEDI, THOMAS WALKER, JACK SKOOG AND DEAN VANEK,

      Defendants.

Case No. 07-CV-3213 (SAS)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM OF DEFENDANTS JACK SKOOG AND SKOOG FAMILY INVESTMENTS, LLC**

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, 3rd Floor
Chicago, Illinois 60610
Telephone: (312) 494-4400
Facsimile: (312) 494-4440

HALPERIN BATTAGLIA RAICHT, LLP
555 Madison Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 765-9100
Facsimile: (212) 765-0964

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ... i

TABLE OF AUTHORITIES ... ii

PRELIMINARY STATEMENT ... 1

STANDARD OF REVIEW FOR A MOTION TO DISMISS ... 2

STATEMENT OF FACTS ... 3

ARGUMENT ... 6

I. THE PRE-PETITION CONTRACT DID NOT RELEASE ANY OF THE LITIGATION TRUSTEE'S CLAIMS BECAUSE THEY "ARIS[E] OUT OF THE AGREEMENTS" AND DO NOT CONCERN THE SKOOG DEFENDANTS AS DIRECTORS ... 6

   A. The Pre-Petition Contract Contains A Key Exception That Exempts The Litigation Trustee's Claims Against SFI And Skoog ... 6

   B. The Pre-Petition Contract Only Releases SFI And Skoog For Their Actions As A Director, But Neither Claim To Have Been A Director In March 2004 ... 7

II. THE COUNTERCLAIM WAS DISCHARGED BY MERIDIAN'S BANKRUPTCY ... 8

III. THE PRE-PETITION CONTRACT CANNOT BIND THE LITIGATION TRUST WITH RESPECT TO THE AVOIDANCE CLAIMS ... 11

CONCLUSION ... 12

# TABLE OF AUTHORITIES

## Cases

*Allegaert v. Perot*,
  548 F.2d 432 (2d Cir. 1976), cert. denied,
  432 U.S. 910, 53 L. Ed. 2d 1084, 97 S. Ct. 2959 (1977) .................................................... 11

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ............................................................................................................ 2

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
  838 F.2d 890 (7th Cir. 1988) .................................................................................................. 7

*Frederick v. Federal-Mogul Corp.*,
  733 N.W.2d 57 (Mich. Ct. App. 2006) ................................................................................... 9

*In re Annabel*,
  263 B.R. 19 (Bankr. N.D.N.Y. 2001) ..................................................................................... 9

*In re Cleveland*,
  349 B.R. 522 (Bankr. E.D. Tenn. 2006) ................................................................................. 9

*In re Drexel Burnham Lambert Group, Inc.*,
  113 B.R. 830 n.12 (Bankr. S.D.N.Y. 1990) ............................................................................ 9

*In re Energy Smart, Inc.*,
  2007 Bankr. LEXIS 4422 (Bankr. M.D. Fl. 2007) ............................................................... 11

*In re Jensen*,
  995 F.2d 925 (9th Cir. 1993) .................................................................................................. 8

*In re MarketXT Holdings Corp.*,
  361 B.R. 369 (Bankr. S.D.N.Y. 2007) .................................................................................... 7

*In re Peltz*,
  55 B.R. 336 (Bankr. Md. Fl. 1985) ......................................................................................... 9

*Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.)*,
  209 F.3d 125 (2d Cir. 2000) (internal citation omitted) ......................................................... 8

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*,
  75 F.3d 801 (2d Cir. 1996) ..................................................................................................... 3

## Other Authorities

11 U.S.C. § 101(5) ........................................................................................................... 8, 10

11 U.S.C. § 544 ............................................................................................................................. 5

11 U.S.C. § 547 ............................................................................................................................. 5

11 U.S.C. § 548 ............................................................................................................................. 5

11 U.S.C. §550 .............................................................................................................................. 5

Mich. Comp. Law § 450.1345 ...................................................................................................... 5

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Ocean Ridge Capital Advisors, LLC, as litigation trustee of The MAS Litigation Trust, ("Litigation Trustee") submits this memorandum in support of its motion to dismiss the Counterclaim filed by Defendant Skoog Family Investments, LLC ("SFI") and Jack Skoog ("Skoog," and together with SFI, the "Skoog Defendants") for failure to state a claim.

## PRELIMINARY STATEMENT

The underlying lawsuit arises from a scheme by insiders and directors of Meridian Automotive Systems, Inc. ("Meridian") to take $63,000,000 out of Meridian at a time when it was insolvent. Two of those insiders, Defendants SFI and Skoog received over $6,800,000. Within a year of these payments, Meridian filed for bankruptcy.

The United States Bankruptcy Court of Delaware ordered the creation of The MAS Litigation Trust ("Litigation Trust") to evaluate potential claims and recover illegal payments to Meridian's insiders and approved the appointment of the Litigation Trustee to act on behalf of the Litigation Trust.

On April 20, 2007, the Litigation Trustee filed multiple claims against the Skoog Defendants. The Skoog Defendants answered the Litigation Trustee's complaint. On February 1, 2008, the Skoog Defendants filed their Counterclaim. The Skoog Defendants allege that the Litigation Trustee is bound by a pre-bankruptcy petition contract entitled "General Release" (the "Pre-Petition Contract"). Meridian, SFI, and Skoog, among others, executed the Pre-Petition Contract on April 28, 2004, less than one year before Meridian filed for bankruptcy. The Litigation Trustee was not a party to the Pre-Petition Contract.

The Counterclaim alleges the following: that the Litigation Trustee is bound by the Pre-Petition Contract executed by bankruptcy debtor Meridian (Counterclaim ¶22), that the Pre-

Petition Contract released the Litigation Trustee's claims against the Skoog Defendants (Counterclaim ¶24), that the Pre-Petition Contract prohibits the Litigation Trustee from asserting its claims against the Skoog Defendants (Counterclaim ¶23), and that the Litigation Trustee breached a covenant not to sue in the Pre-Petition Contract by bringing its claims against the Skoog Defendants and is liable for fees and costs (Counterclaim ¶25).

None of these Counterclaims are actionable and all should be dismissed. The Pre-Petition Contract did not release the Litigation Trustee's claims asserted against SFI and Skoog in this action and, in any event, was discharged by Meridian's bankruptcy confirmation. Further, the Pre-Petition Contract could not release the avoidance claims that the Litigation Trustee brings in this lawsuit.

## STANDARD OF REVIEW FOR A MOTION TO DISMISS

A motion to dismiss a complaint under Rule 12(b)(6) must be evaluated to determine whether the "[f]actual allegations … raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 2007 U.S. LEXIS 5901, 127 S. Ct. 1955, 1965 (2007).

As demonstrated below, the Counterclaim fails to state factual allegations that raise a right to relief. Therefore, the Counterclaim should be dismissed.

## STATEMENT OF FACTS

Before filing for bankruptcy, Meridian issued SFI $23,092,542.45 in notes (the "Notes"). (Counterclaim ¶5)[1] SFI also owned a Common Stock Purchase Warrant (the "Warrant") entitling it to purchase 1,377.6495 shares of Class A Common Stock of Meridian. (Counterclaim ¶6) Pursuant to a Note and Warrant Agreement, executed on March 24, 2004, SFI transferred the Notes to Meridian and cancelled the Warrant. (Counterclaim ¶8; Def. Ex. A) On April, 28, 2004, Meridian paid $6,700,000 to SFI. (Counterclaim ¶5)

SFI, Skoog and bankruptcy debtor Meridian entered into a contract as of April 28, 2004 pursuant to the Note and Warrant Agreement. (Def. Ex. B) This contract, the Pre-Petition Contract, between SFI, Skoog, and bankruptcy debtor Meridian was entitled "General Release." (*See id.*) Meridian released SFI, Skoog, Craig Van Ess, Richard Dauch, and Tom Heiden from causes of action arising out of service by any of them "as a director of Meridian." (*See id.*) However, the Pre-Petition contract excluded from release any liabilities arising out of the Note and Warrant Agreement or a consulting agreement between Skoog and Meridian. (*See id.*) The Pre-Petition Contract also included a covenant not to sue on any cause of action released pursuant to the Pre-Petition Contract. (Counterclaim ¶10)

On April 26, 2005, Meridian and its affiliated entities filed for bankruptcy. Meridian filed four plans of reorganization during its bankruptcy. (Counterclaim ¶13) The bankruptcy court confirmed Meridian's Fourth Amended Joint Plan of Reorganization (the "Plan"). (Counterclaim ¶¶14, 16) (Relevant excerpts of the Plan are attached as Exhibit 1 to the Affidavit of J. Byars.) Section 7.13 of the Plan provided that certain claims would be contributed to a trust

---

[1] The facts set forth in this brief are based on the allegations of the Counterclaim and Complaint. The full text of any document specifically quoted or referred to in a complaint or counterclaim may be considered by a court on a motion to dismiss. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

and for the appointment of a litigation trustee who would prosecute these claims and distribute any recoveries. (Counterclaim ¶¶14, 15; Ex. 1 at 29-30)

On or before November 21, 2006, Meridian had served on certain parties a notice that (a) detailed claims that would be preserved under the Plan, (b) notified the parties of the extension of the deadlines for voting on and objecting to the confirmation of the Plan, and (c) included a draft of the Litigation Trust Agreement. (Relevant excerpts of this notice and the draft Litigation Trust Agreement are attached as Exhibit 2 to the Affidavit of J. Byars.) Among the parties who received the notice were the parties listed on Exhibit D of the draft Litigation Trust Agreement (Ex. 2 at Exhibit D) Skoog and SFI were two of the parties listed on Exhibit D to the draft Litigation Trust Agreement. (Ex. 2 at Exhibit D) Exhibit D to the Litigation Trust Agreement also listed potential causes of action that might be asserted against Skoog and SFI, including voidable preferences, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and gross negligence. (Ex. 2 at Exhibit D)

On December 6, 2006, the bankruptcy court entered an order confirming Meridian's Plan (the "Order") including the Litigation Trust Agreement and Exhibit D to the Agreement. (Counterclaim ¶14) (Relevant excerpts of the Order are attached as Exhibit 3 to the Affidavit of J. Byars.) As noted in the Order, only four parties filed objections to the confirmation of the Plan. Skoog and SFI were not among them. (Ex. 3 at 3)

On December 29, 2006, Meridian and the Litigation Trustee executed the Litigation Trust Agreement approved by the bankruptcy court. (Relevant excerpts of the executed Litigation Trust Agreement are attached as Exhibit 4 to the Affidavit of J. Byars.) Most importantly, Section 2.3 of the Litigation Trust Agreement, stated that all actions set forth in Exhibit D,

4

including those described above, were transferred to The MAS Litigation Trust free and clear of all claims, liens, and interests. (Ex. 4 at 7)

On April 20, 2007, the Litigation Trustee sued SFI and Skoog. (Counterclaim ¶19) The Complaint alleged that SFI and Skoog were insiders of Meridian who used their influence to strip over $6.8 million out of Meridian when they knew the company was insolvent. (Complaint ¶¶18, 48, 138, 143) Specifically, the Litigation Trustee sued SFI for (1) unlawful distributions that were made in violation of Mich. Comp. Law § 450.1345 (the "First Claim for Relief"), (2) aiding and abetting breaches of fiduciary duties (the "Third Claim for Relief"), and (3) intentional fraudulent transfers in violation of 11 U.S.C. § 548 and § 544 through applicable state fraudulent transfer statutes (the "Seventh Claim for Relief"). The Litigation Trustee sued both SFI and Skoog for (1) civil conspiracy to commit breaches of fiduciary duties (the "Fourth Claim for Relief"), (2) gross negligence (the "Fifth Claim for Relief"), (3) preferential transfers in violation of 11 U.S.C. § 547 and § 544 through applicable state preference statutes (the "Sixth Claim for Relief"), (4) constructive fraudulent transfers 11 U.S.C. § 548 and § 544 through applicable state fraudulent transfer statutes (the "Eighth Claim for Relief"), (5) turnover of avoided transfers pursuant to 11 U.S.C. §550 (the "Ninth Claim for Relief"), and (6) attorneys' fees (the "Tenth Claim for Relief"). All of the Litigation Trustee's claims were set forth in Exhibit D of the court approved Litigation Trust Agreement attached to the Plan. (Ex. 4 at Exhibit D)

5

# ARGUMENT

I. **THE PRE-PETITION CONTRACT DID NOT RELEASE ANY OF THE LITIGATION TRUSTEE'S CLAIMS BECAUSE THEY "ARIS[E] OUT OF THE AGREEMENTS" AND DO NOT CONCERN THE SKOOG DEFENDANTS AS DIRECTORS**

All of the claims Litigation Trustee's asserted against the Skoog Defendants arise out of the Note and Warrant Agreement dated March 24, 2004 (the "Note and Warrant Agreement") and Consulting Agreement dated April 30, 1997 (the "Consulting Agreement"). By its terms, the release in the Pre-Petition Contract did not apply to SFI and Skoog liabilities arising out of these agreements.[2] Further, the release only applied to the actions of SFI and Skoog as directors.

### A. The Pre-Petition Contract Contains A Key Exception That Exempts The Litigation Trustee's Claims Against SFI And Skoog

The Pre-Petition Contract contains a determinative limiting exception. The Pre-Petition Contract states that the release applies to some Meridian claims, but not "the liabilities and obligations arising out of the Agreements." (Def. Ex. B at 2) The Pre-Petition Contract defines "Agreements" as the Note and Warrant Agreement and the Consulting Agreement. (*See id.* at 1)

The Litigation Trustee's causes of action are liabilities of SFI and Skoog that arise directly out of the Agreements. SFI received $6,700,000 from Meridian pursuant to the Note Agreement. (Counterclaim ¶8) Skoog received and additional $175,000 from Meridian pursuant to the Consulting Agreement. (Complaint ¶88)

The Litigation Trustee contends that SFI aided and abetted breaches of fiduciary duties by Meridian's directors by allowing these payments to be made to Skoog and SFI on the Agreements. (Complaint ¶¶104-123) The Litigation Trustee also contends the payments made

---

[2] The covenant not to sue in the Pre-Petition Contract only applies to claims that were released. (Def. Ex. B at 2) Because the Pre-Petition Contract did not release the Litigation Trust's claims, the covenant not to sue is inapplicable to those claims.

6

pursuant to the Agreements to SFI and Skoog were fraudulent conveyances, preferential transfers, and unlawful distributions under Michigan law.[3] (Complaint ¶¶97-103, 136-168) Because each claim arises out of the Agreements, the Pre-Petition Contract did not release the Litigation Trustee's claims.

      **B.    The Pre-Petition Contract Only Releases SFI And Skoog For Their Actions As A Director, But Neither Claim To Have Been A Director In March 2004**

The Pre-Petition Contract forming the basis for the Counterclaim released SFI and Skoog from all causes of action "***arising out of service by***" Skoog, SFI, Craig Van Ess, Richard Dauch, or Tom Heiden "***as a director of***" Meridian. (Def. Ex. B at 1-2 (emphasis added)) To fall within the language of the release, both SFI and Skoog must assert that the Litigation Trustee's claims arise out of their service as a director. SFI is a limited liability corporation and cannot be a director of another corporation. Moreover, Skoog and SFI have never claimed that Skoog was a director of Meridian at the time relevant to this action. (*See* Counterclaim)

SFI and Skoog seem to suggest the Litigation Trust's causes of action arise out of the service of Mr. Van Ess as director of Meridian and that therefore the Litigation Trustee is barred from bringing its claims against them. (Counterclaim ¶23) But SFI and Skoog have never claimed that Mr. Van Ess was a director of Meridian at the relevant time. On the contrary, in their original Answer to the Complaint, SFI and Skoog stated that they did not know whether Mr. Van Ess was on the Meridian board of directors at the time of the 2004 Refinancing. (Answer ¶¶18, 39, and 48) (Relevant excerpts of the Answer are attached as Exhibit 5 to the Affidavit of J. Byars.)

---

[3] The contract itself likely was a fraudulent conveyance. "Fraudulent conveyance law protects creditors from last-minute diminutions of the pool of assets in which they have interests." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 892 (7th Cir. 1988). "A release obtained for less than fair value can constitute a constructive fraudulent conveyance." *In re MarketXT Holdings Corp.*, 361 B.R. 369, 399 (Bankr. S.D.N.Y. 2007). The contract was part of the scheme to defraud Meridian's creditors and therefore was not obtained for fair value.

7

Even if Mr. Van Ess was a director at the relevant time, the claims against SFI and Skoog arise from their own participation in the execution of the Agreements, not from their or anyone else's actions as directors. Since the Litigation Trustee's claims do not arise out of SFI's, Skoog's, or anyone else's service as Meridian directors, the Pre-Petition Contract did not release the Litigation Trustee's claims.

## II.  THE COUNTERCLAIM WAS DISCHARGED BY MERIDIAN'S BANKRUPTCY

The Counterclaim should also be dismissed because the Pre-Petition Contract and the cause of action for the breach of the covenant not to sue is a pre-petition contingent claim that was discharged by Meridian's bankruptcy confirmation.

Under the bankruptcy code, a "claim" is:

> (A) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, **contingent**, matured, **unmatured**, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added).

"A valid pre-petition claim requires two elements. First, the claimant must possess a right to payment. Second, that right must have arisen prior to the filing of the bankruptcy petition." *See Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.)*, 209 F.3d 125, 128 (2d Cir. 2000) (internal citation omitted).

As to when a claim in bankruptcy arises, it is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued, "**no matter how remote or contingent**." *In re Jensen,* 995 F.2d 925, 929 (9th Cir. 1993) (internal quotation marks omitted) (emphasis in original). It makes no difference that the

breach occurred after the petition was filed. Courts routinely hold that a cause of action based on a *pre-petition* contract is a *pre-petition* claim. *In re Cleveland*, 349 B.R. 522, 533 (Bankr. E.D. Tenn. 2006) (escrow payments sought were pre-petition claims even though they matured post-petition because the obligation arose in a pre-petition agreement); *In re Annabel*, 263 B.R. 19, 27 (Bankr. N.D.N.Y. 2001) (any monetary damages arising from debtor's post-petition breach of a pre-petition covenant not to compete were discharged pursuant to bankruptcy order); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 840 n.12 (Bankr. S.D.N.Y. 1990) (a cause of action based upon the breach of an obligation to contribute additional equity was a pre-petition claim even though the breach occurred post-petition because the obligation arose in a pre-petition contract); *In re Peltz*, 55 B.R. 336, 338 (Bankr. Md. Fl. 1985) (right to payment for breach of a pre-petition covenant not to compete arose on the day the parties entered into their agreement but was contingent upon the debtor's breach; since the right to payment arose pre-petition even though the technical 'breaching day' occurred post-petition, the claim for damages was discharged by the bankruptcy proceedings); *Frederick v. Federal-Mogul Corp.*, 733 N.W.2d 57, 59-60 (Mich. Ct. App. 2006) (causes of action based on post-petition breach of a pre-petition contract were discharged in bankruptcy proceedings as pre-petition claims).

In this case, SFI and Skoog's claim for the breach of the covenant not to sue satisfies both elements of a pre-petition claim. First, it is a "claim" under bankruptcy law because the Pre-Petition Contract says that a breach of the covenant not to sue gives rise to a right to payment, *i.e.* the breaching party must pay the non-breaching parties' attorneys fees and costs. (Def. Ex. B. at 2) Second, that claim arose pre-petition. The Pre-Petition Contract was executed pre-petition, on April 28, 2004. (Def. Ex. B at 3) The obligation to pay monetary damages in the

9

event of a breach of the covenant not to sue arose at that point. It is irrelevant that the pre-petition claim was contingent. *See* 11 U.S.C. 101(5).

On December 6, 2006, the bankruptcy court confirmed the plan. (Counterclaim ¶16) As set forth below, Section 10.2 of the Plan discharged and released all claims against Meridian:

> Section 10.2. <u>Discharge of Claims and Termination of Meridian Interests</u>.
>
> (a)   Pursuant to section 1141(d) of the Bankruptcy Code, and except as provided in the Confirmation Order, the Distributions and rights provided in this Plan and the treatment of Claims and Interests under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, and satisfaction or termination of all Prepetition Meridian Interests, including any interest accrued on Claims from and after the Petition Date. Except as otherwise provided in this Plan or the Confirmation Order, Confirmation shall, as of the Effective Date: (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (x) a proof of claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (y) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code or (z) the holder of a Claim based on such debt has accepted this Plan; and (ii) terminate and cancel all Prepetition Meridian Interests.

(Ex. 1 at 39-40)

A cause of action for the covenant not to sue cannot be brought against the Litigation Trustee because the claim was discharged. This is a manifestly fair result. On numerous occasions including on November 21, 2006, SFI and Skoog were notified that they were listed in bankruptcy filings as potential defendants of various causes of action, including avoidance actions and causes of action resting on breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, and gross negligence. (Ex. 2 at Exhibit D) These are the very causes of action now asserted against SFI and Skoog.

Skoog Defendants were also notified that they had an opportunity to object to the Plan. (Ex. 2 at first page and Exhibit D) They did not enter an objection. (Ex. 3 at 3) Now, over a year after they declined their opportunity to object to the Plan and almost six months after they filed an Answer that raised none of the causes of action contained in their Counterclaim, SFI and

10

Skoog are frustrating the execution of the Plan and the Litigation Trustee's performance of its court ordered duties.

If SFI and Skoog really believed the Pre-Petition Contract bound the Litigation Trustee, they could have objected to the bankruptcy court at that time. But they remained silent. Their attempts to thwart the interests of Meridian's creditors and the Court confirmed Plan should not be entertained at this late date.

**III.    THE PRE-PETITION CONTRACT CANNOT BIND THE LITIGATION TRUST WITH RESPECT TO THE AVOIDANCE CLAIMS**

The Litigation Trustee's claims break down into two groups: the First, Third, Fourth, and Fifth claims (the "Non-Avoidance Claims") and the Sixth through Tenth Claims (the "Avoidance Claims").

The Avoidance Claims, based on fraudulent conveyances and preferential transfers to Skoog and SFI, never belonged to pre-bankruptcy Meridian and therefore could not be released by Meridian in the Pre-Petition Contract. Instead, the Avoidance Claims are granted to the Litigation Trustee by "the strong-arm powers codified in 11 U.S.C. Sections 544, 547, 548, 549, and 550." *In re Energy Smart, Inc.*, 2007 Bankr. LEXIS 4422, *45 (Bankr. M.D. Fl. 2007).

In making its Avoidance Claims, the Litigation Trustee is serving the interests of the Beneficiaries of Litigation Trust. (Counterclaim ¶18) The Beneficiaries of the Litigation Trust are Meridian's pre-petition creditors, not Meridian. (Ex. 4 at 2)

Therefore, the Litigation Trustee asserts the Avoidance Claims for the benefit of Meridian's pre-petition creditors based on the rights of Meridian's creditors. *See Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1976), cert. denied, 432 U.S. 910, 53 L. Ed. 2d 1084, 97 S. Ct. 2959 (1977). Pre-bankruptcy Meridian could not have asserted, much less released, the Avoidance Claims. Because the Litigation Trustee is not standing in Meridian's shoes to bring

11

the Avoidance Claims, it is not bringing the claims "through or under" Meridian, and the Pre-Petition Contract does not bind the Litigation Trustee.

## CONCLUSION

In conclusion, the Pre-Petition Contract does not bar any of the Litigation Trustee's claims against SFI or Skoog because the contract exception applies to the claims, and SFI and Skoog do not claim to have been acting as directors of Meridian. The counterclaim of SFI and Skoog for breach of the covenant not to sue in the Pre-Petition Contract was discharged by Meridian's bankruptcy confirmation. The Pre-Petition Contract also does not bar the Litigation Trustee's avoidance claims provided by the bankruptcy code's strong arm powers.

For these reasons as explained above, the law and the facts require the dismissal of the Counterclaim in its entirety. Plaintiff requests that the Court enter the proposed order, attached to this Memorandum as Exhibit A.

DATED: February 20, 2008

Respectfully submitted,

By: _____
Attorneys for Plaintiff

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
James B. Heaton, III
Steven J. Nachtwey
John D. Byars
54 West Hubbard Street, 3rd Floor
Chicago, Illinois 60610
Telephone: (312) 494-4400
Facsimile: (312) 494-4440

HALPERIN BATTAGLIA RAICHT, LLP
Alan D. Halperin (AH-8432)
Neal W. Cohen (NC-3573)
555 Madison Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 765-9100
Facsimile: (212) 765-0964